## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KHADIJAH HAJJAJ, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>RENTGROW, INC., DBA YARDI RESIDENT SCREENING,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Khadijah Hajjaj, by and through her attorneys, on behalf of herself and the Class set forth below, bring the following Class Action Complaint against RentGrow, Inc., d/b/a/ Yardi Resident Screening ("Yardi" or "Defendant").

### INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") against a screening company who routinely violates the FCRA's basic protections by failing to follow reasonable procedures to ensure that the tax lien data it reports is accurate.   Plaintiff also brings an individual action pursuant to California law.

### THE PARTIES

2. Plaintiff Khadijah Hajjaj is an individual person and a resident of Los Angeles, California.

3. Defendant RentGrow, Inc., d/b/a/ Yardi Resident Screening is a Delaware corporation with its principal office located at 307 Waverly Oaks Road, Suite 301, Waltham, Massachusetts.

4.      Defendant is a consumer reporting agency as defined by the FCRA, and provides background reports regarding potential tenants to landlords.      *See* http://www.yardi.com/products/yardi-resident-screening/.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).   Defendant resides and is headquartered in this District.

## STATUTORY BACKGROUND

7.      Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for housing.   Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

8.      While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.   15 U.S.C. § 1681.

9.      15 U.S.C. § 1681e(b) requires Consumer reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports.   As discussed below, Defendant routinely violates the FCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports. This lack of reasonable procedures causes Defendant to routinely report satisfied tax liens as outstanding.

## ALLEGATIONS RELATING TO PLAINTIFF

10.     Plaintiff is a Chief Petty Officer in the United States Navy.  Her current principal duty involves enlisting new naval recruits.  In that role, Plaintiff has been stationed at a number of locations across the country.

11.     In 2015, Plaintiff was stationed in South Carolina and, with her husband and children, was renting a house there.  Towards the end of 2015, Plaintiff's orders were that she was going to be transferred to a new location near Las Vegas, Nevada.

12.     During this time, Plaintiff was not a legal resident of South Carolina; members of the military do not change their legal residency when they are deployed to another state. Plaintiff was then and remains a legal resident of California.

13.     However, when Plaintiff was in South Carolina, a tax preparer erroneously filed a return with the state of South Carolina for the tax year 2014.  This lead to a $335.95 tax lien erroneously being assessed against Plaintiff.  See Exhibit 1.

14.     Rather than spend the time and resources to dispute this erroneous lien, Plaintiff paid the lien in full on March 18, 2016.  *Id.*

15.     In October 2015, Plaintiff discovered that her infant daughter was gravely ill with a brain tumor and Posterior Fossa Syndrome, both of which required urgent medical attention. Because of this, Plaintiff's transfer to Las Vegas was indefinitely suspended.

16.     In June of 2016, on her daughter's doctor's recommendation, Plaintiff was transferred to the Los Angeles area, so that her daughter could have access to specialists in her condition at the Children's Hospital Los Angeles.

17.     When moving to Los Angeles, it was important to Plaintiff to find new housing quickly, for all of the reasons that any family moving to a new city would want to find housing

quickly, but also because acquiring a permanent address was a critical step in acquiring referrals to specialists that were needed to care for her daughter.

18.     In June 2016, Plaintiff, working with Waypoint Homes, a property management company, found an ideal home.  Not only was it near to the children's hospital, but it also had an open floor plan, which would accommodate her daughter's gait trainer — a wheeled device which assists her in walking — as well as a swimming pool which would assist in her physical therapy.  Plaintiff sought to rent the home.

19.      Waypoint Homes, in considering Plaintiff's application, purchased a "resident screening report" from Defendant.  This report is attached as Exhibit 2.

20.     Defendant sells "resident screening reports" to landlords and property management companies.  These reports are "consumer reports" as defined by the FCRA.  See Ex. 2 at 9 (acknowledging that the report is governed by the FCRA).

21.     Defendant's "resident screening reports" include information aggregated from a number of different sources, and also include scoring and recommended actions — called "results" — generated by Defendant.  See Ex. 2 at 9 ("the data obtained by [Defendant] is maintained, updated and furnished to [Defendant] by third-parties including public agencies, vendors and the three major credit bureaus."[1]

22.     Defendant's report, issued June 13, 2016, recommended that Waypoint "decline" Plaintiff's application due to "severe level of Judgment(s) or Suit(s)."  Ex. 2 at 1.

23.     Defendant's report assesses "points," both positive and negative, based on Plaintiff's history.  *Id*.  Plaintiff's report contained numerous positive entries, and three entries

---

[1] Even if Defendant is reselling data it obtains from other CRAs, it has an independent obligation to comply with the FCRA.  *Henderson v. Corelogic Nat'l Background Data, LLC*, 161 F. Supp. 3d 389, 395 (E.D. Va. 2016).

assigned a negative value.  *Id*.  Those three negative entries totaled a negative 42 points, 35 of which were attributable to the South Carolina tax lien.  *Id*. at 8.

24.     Defendant's reporting of the South Carolina tax lien was the reason Defendant recommended that Waypoint decline Plaintiff's rental application.

25.     Defendant's reporting of the South Carolina tax lien was the reason Waypoint declined Plaintiff's rental application.

26.     Defendant's reporting of the South Carolina tax lien was inaccurate.  Defendant reported the tax lien as unpaid, when, in fact, at the time of the report it had been paid in full for nearly three months.

27.     Defendant never consulted the original South Carolina records to determine the current status of the lien, even though those records were readily available and would have shown that the lien had been paid.

28.     In fact, the relevant tax lien information was available online in on a website operated by the State of South Carolina.  See Ex. 3.  That online record indicated that the lien had been satisfied, and the record had been updated on line as of March 18, 2016.  If Defendant had done a simple online search, it would have avoided incorrectly reporting the lien as unpaid.

29.     Instead, Defendant purchased the tax lien information at issue from Experian. Experian has been sued a number of times for reporting out-of-date tax lien information, so Defendant was on notice that the information was unreliable.  See *Clark v. Experian Info. Sols.*, Inc., 3:16-cv-23 (E.D. Va. Jan. 2016); *Camarata v. Experian Info. Sols., Inc.*, 1:16-cv-00132 (S.D.N.Y. Jan. 2016).

30.     Further, the other two major credit bureaus, Transunion and Equifax, were not incorrectly reporting Plaintiff's lien status, making reliance on Experian even more unreasonable.

31.     Because of Defendant's inaccurate reporting, Plaintiff faced several weeks of delays before securing housing for herself and her family.  During that time, she and her entire family lived in a single room with extended family, her daughter was unable to get the referrals to the care she urgently needed, and the family's clothing and belongings could not be delivered from South Carolina.

32.     Further, when Plaintiff actually secured housing, it was less ideal than the house Waypoint refused to rent her based on Defendant's flawed reporting.  It was less accessible to her daughter's gait trainer, did not have a pool for use with physical therapy, is less convenient to the children's hospital, and, unlike the home Plaintiff originally sought, it did not come equipped with a refrigerator, causing Plaintiff to have to purchase one out-of-pocket.

33.     The denial of housing caused by Defendant's flawed reporting also caused Plaintiff to suffer emotional distress, stress in her relationship with her husband, difficulty sleeping, and difficulty adapting to her new deployment.

## CLASS ALLEGATIONS

34.     Plaintiff asserts Count I on behalf of the Class defined as follows:

> All natural persons with an address in the United States and its Territories:
> (i) who had a tax lien recorded; (ii) whose tax lien appeared on one of
> Defendant's consumer reports at any time from the date two years prior to
> the filing of this Complaint and continuing through the resolution of this
> case; and (iii) whose tax lien had been paid, satisfied, or released on a date
> prior to the date of the consumer report.

35.     Numerosity:  The Classes are so numerous that joinder of all class members is impracticable.  Defendant produces reports to landlords nationwide, and has produced thousands

6

of reports on prospective tenants during the class period, many of whom are members of the Class.

36.    <u>Typicality</u>:  Plaintiff's claims are typical of the class members' claims.  Defendant treated Plaintiff in the same manner as other class members.

37.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class, and has retained counsel experienced in complex class action litigation.

38.    <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. These common questions include:

    a.   Whether Defendant willfully violated the FCRA by reporting tax liens which were actually paid;

    b.   Whether Defendant willfully violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the tax lien information it reported;

    c.   The proper measure of statutory and punitive damages; and

    d.   The proper form of declaratory relief.

39.    Class certification is appropriate under Fed. Civ. P. R. 23(b) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the

expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

**COUNT I**
**15 U.S.C. § 1681e(b)**
***Failure to Follow Reasonable Procedures***
***On Behalf of Plaintiff and the Class***

40.     Plaintiff incorporates the paragraphs above.

41.     Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the tax lien information in the consumer reports it prepared regarding Plaintiff and the other class members.

42.     The foregoing violations were negligent.

43.     The foregoing violations were willful.

44.     Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and class members under 15 U.S.C. § 1681e(b). Defendant's negligent and willful conduct is reflected by, *inter alia*, the following:

> a.     Defendant received the tax lien information at issue from Experian. Experian has been sued a number of times for reporting out-of-date lien and public records information, so Defendant was on notice that the information was unreliable. See *Clark v. Experian Info. Sols.*, Inc., 3:16-cv-23 (E.D. Va. Jan.

2016); *Camarata v. Experian Info. Sols., Inc.*, 1:16-cv-00132 (S.D.N.Y. Jan. 2016);

b. Defendant took no action whatsoever to update or verify the lien information it received from Experian;

c. Defendant never consulted the original South Carolina records to determine the current status of the lien, even though those records were readily available and would have shown that the lien had been paid;

d. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

e. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

f. Defendant knew or had reason to know that Defendant's conduct violated the FCRA;

g. Defendant knowingly benefitted from its unlawful conduct by relying on third party data providers, and avoiding the expense of verifying that the information it reported was accurate; and

h. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

45.     Plaintiff and the class members are entitled to actual and statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A), 1681o.   Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).   Plaintiff and the

class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2).

## COUNT II
### Cal. Civ. Code § 1786.20(b)
### *Failure to Follow Reasonable Procedures*
### *On Behalf of Plaintiff*

46.   Plaintiff incorporates the paragraphs above.

47.   Defendant is an "investigative consumer reporting agency" and the report attached as Ex. 2 is an "investigative consumer report," both as defined by Cal. Civ. Code § 1786.2.

48.   Pursuant to Cal. Civ. Code § 1786.20(b), Defendant was required to follow reasonable procedures to ensure the maximum possible accuracy of the contents of the report.

49.   For the reasons listed above, Defendant failed to meet that obligation.

50.   Pursuant to Cal. Civ. Code § 1786.50(a)(1) Defendant is liable to Plaintiff in the amount of $10,000 or actual damages, whichever is greater, as well as attorneys' fees and costs.

51.   Because Defendant's violation was willful, as noted above, Defendant is also liable to Plaintiff for punitive damages.  Cal. Civ. Code § 1786.50(b).

## PRAYER FOR RELIEF

52.   WHEREFORE, Plaintiff, on behalf of herself and the Class, pray for relief as follows:

a.   Determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b);

b.   Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Class;

c.   Issuing proper notice to the Classes at Defendant's expense;

    d.   Declaring that Defendant violated the FCRA;

    e.   Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f.   Awarding actual, statutory and punitive damages as provided by the FCRA;

    g.   Awarding reasonable attorneys' fees and costs as provided by the FCRA;

    h.   Declaring that Defendant violated Cal. Civ. Code § 1786.20(b);

    i.   Awarding actual statutory and punitive damages and attorneys' fees and costs as provided for by Cal. Civ. Code § 1786.50; and

    j.   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

53.    Plaintiff and the Class demand a trial by jury.

Respectfully submitted,

Dated:  January 17, 2017

/s/ *Harold L. Lichten*
Harold L. Lichten, MA Bar No. 549689
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:  (617) 994-5800
hlichten@llrlaw.com

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366
Joseph C. Hashmall, MN Bar No. 0392610
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Telephone:  (612) 594-5999
Facsimile:  (612) 584-4470

FRANCIS & MAILMAN, P.C.
James A. Francis, PA Bar No. 77474
Land Title Bldg., 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000
jfrancis@consumerlawfirm.com